ROYAL AUTO SALES COMPANY *vs.* GEORGE R. BUSH.

JUNE 25, 1925.

PRESENT: Sweetland, C. J., Stearns, Rathbun, and Sweeney, JJ.

*(1)   Contracts.   Damages.   Evidence.*

Evidence as to the number of cars sold by plaintiff during the year preceding the time when the contract with defendant was entered into, followed by testimony that in the opinion of plaintiff based on the experience of the preceding year, it would have sold a certain number during the year of the contract, admitted on the promise of plaintiff to show the expenses incurred in making the sales, was incompetent where plaintiff did not follow it with evidence showing the cost of doing the business.

*(2)   Contracts.   Damages.   Evidence.*

In an action for breach of contract giving plaintiff an exclusive agency for sale of motor cars evidence as to the amount of rent plaintiff was offered for the use of its salesrooms, was admissible where there was nothing to show the offer was not *bona fide* or that the circumstances were exceptional, as tending to throw some light on the rental value of that portion of plaintiffs salesrooms used for exhibiting the cars.

*(3)   Contracts.   Damages.*

Where it did not appear that at the time of entering into a contract for an agency for the sale of motor cars, either party gave any consideration to the fact that plaintiff agent owned two of the cars, and might desire to sell them; in an action by agent for breach of contract, loss on the two cars is not an element of damage.

ASSUMPSIT. Heard on exceptions of defendant and exception as to damages sustained.

PER CURIAM. This is an action in assumpsit to recover damages for an alleged breach of contract giving the plaintiff the exclusive right to sell Westcott automobiles within the city of Woonsocket and certain towns in that vicinity. The trial in the Superior Court resulted in a verdict for the plaintiff for $3,000 and the case is before us on the defendant's exceptions as follows: to rulings of the trial justice admitting testimony and to a ruling of said justice denying the defendant's motion for a new trial.

On January 30, 1922, the defendant, who had the general agency for the sale of Westcott automobiles in Rhode Island and a portion of Massachusetts, entered into a written contract with the plaintiff whereby the latter obtained the exclusive right for a period of one year to sell Westcott cars within said city and towns. The defendant agreed to sell to the plaintiff as many cars as the plaintiff should require at a discount of twenty per cent off the list price and the plaintiff agreed to take at least ten cars during the year in accordance with a monthly schedule, based on the season, to be agreed upon. The contract provided that on "failure to fulfill this program during any ninety days the agreement would automatically terminate" unless the parties agreed to another schedule. In accordance with an agreement the plaintiff, to secure the payment of its account, deposited $200 with the defendant. On May 26, 1922, the plaintiff, having sold but three cars, the defendant wrote to the plaintiff stating that: "It is also to be noted that you have not taken cars anywhere near the proportion you should have in relation to your allotment. In view of these facts we feel it would be to our mutual benefit to terminate our sales agreement with you, effective five days from date", and asking the plaintiff to remit a balance of $300 which the letter stated was due after crediting the plaintiff with the $200 deposited for security. It is the plaintiff's con-

tention that no monthly schedule was agreed upon and that the defendant breached the agreement not only by this letter but also by selling cars within the plaintiff's territory. The defendant contends that a schedule was agreed upon whereby the plaintiff was obligated to take several more cars than the plaintiff purchased during the months of February, March and April and that, after the contract in question was executed, it was agreed that the defendant, by allowing the plaintiff a commission of five per cent of the cash received, could have the privilege of selling Westcott cars within the plaintiff's territory when used cars were taken in part payment. The plaintiff denied that any agreement was made fixing the monthly schedule of cars to be taken and also denied that the defendant was given any privilege of exchanging cars within the plaintiff's territory.

The jury found upon conflicting testimony that the defendant breached the written contract and we are unable to say that the trial justice was clearly wrong in approving the findings of the jury upon the question of liability but on no reasonable view of the testimony submitted could the jury possibly assess damages at an amount approaching $3,000.

The question as to the amount of damages was submitted to the jury with an instruction to award, if the defendant was liable, damages equal to the amount of profits which the plaintiff lost by reason of the contract being broken or, if the jury were unable to ascertain from the evidence the amount of profits which were lost, to award an amount equal to the expenses which were reasonably incurred for the purpose of fulfilling the contract and lost by reason of the breach. The defendant excepted to the instruction that damages equal to expenses incurred could be awarded but the exception was not pressed before us and the instruction is the law of the case.

The plaintiff is a corporation which had done little or no business, at least under the name Royal Auto Sales Co.,

before the contract was made with the defendant. It is not clear whether the plaintiff corporation bought the assets of the Regina Auto Sales Company, a corporation, or whether the name of the latter company was changed to Royal Auto Sales Company, but it appears from the testimony of the witnesses for the plaintiff that the stockholders and officers of the plaintiff corporation are identical with those formerly occupying the same positions in the Regina Auto Sales Company. The plaintiff contended that it had an established business which had been "successfully conducted for such a length of time, and had such a trade established" that the future profits thereof were reasonably ascertainable. See 17 C. J. 796. The officers and managers of the plaintiff corporation were permitted to testify that they sold during the year preceding the time when the contract was entered into thirteen Westcott cars and were permitted to testify that in their opinion, based on the experience of the preceding year, if the contract had not been broken they would have sold twenty Westcott cars during the year for which the contract gave the plaintiff an exclusive agency. The defendant objected to the admission of the above testimony but it was admitted, and the defendant's exception was noted, after the promise of the plaintiff's attorney to produce the books of the Regina Auto Sales Company and show therefrom the expenses incurred by said company in making the alleged sales. As the books were not produced and as no evidence as to expenses was submitted it does not appear whether the Regina Auto Sales Company made a profit or a loss on the sales of Westcott cars and there is nothing upon which to base a finding that the business of selling Westcott cars "was an established one" and that it had been successfully conducted for a sufficient time and with such a trade that future profits were reasonably ascertainable. As the plaintiff failed to follow up the above testimony with evidence as to the cost of doing business the testimony in question was incompetent —see *Central Coal & Coke Co.* v. *Hartman,* 111 Fed. 96—

and might well have been stricken out if a motion to that effect had been made.

The defendant sold five cars within the plaintiff's territory. In each instance a used car was taken, as part payment, at a price in excess of the actual value. It appears that the plaintiff was also accustomed to exchange new for used cars and to make such a liberal allowance for the used car that the profit on the new car was materially reduced. It does not appear what it would have cost the plaintiff to sell these five cars and it is impossible because of the lack of evidence to determine even approximately what the plaintiff's profit, if any, on these cars would have been.

The defendant excepted to the admission of testimony as to the amount of rent the plaintiff was offered for the use of its salesroom. It was not suggested that the offer was not (2) *bona fide* or that the circumstances were exceptional. The evidence was admissible as it tended to throw some light on the question of the rental value of that portion of the plaintiff's salesroom used for exhibiting Westcott cars for sale. See 22 C. J. 179. The rental value of space used for the purpose of selling Westcott cars was an item of the cost of doing business. Whether the plaintiff, after the contract was broken, made a profitable use of the space theretofore used in the sale of Westcott cars, or attempted to obtain a tenant therefor, does not appear.

Notwithstanding the fact that the trial justice ruled that there could be no recovery for loss on goods which the plaintiff purchased before the date of the contract in question (3) said justice in approving the verdict on the question of damages found that the jury were warranted in awarding the plaintiff more than the $2,500 as a loss on two Westcott cars which the plaintiff purchased from another concern and had on hand when the written contract between the parties was made. The sale price of these two cars depreciated because of lapse of time and because of the fact that a new model was put on the market. It does not appear that either party at the time the contract was made gave any

consideration to the fact that the plaintiff owned two West-cott cars and might desire to sell them. The plaintiff's failure to make some secret gain or avoid a loss relative to a matter which was not fairly in contemplation of the parties when they contracted is not damage for which a recovery can be had for breach of the contract.

The officers of the plaintiff corporation testified that it expended $500 for advertising. No receipts or books were produced and witnesses were unable to state what proportion should be charged for advertising Chevrolet cars and the plaintiff's general business and how much for advertising the Westcott car. One of the plaintiff's officers estimated that $1,500 was expended in paying salesmen for the Westcott car but it appeared from the same witness that all salesmen except one worked on a commission basis; that the plaintiff paid a salary to but one salesman who received $20 per week plus a commission on the sale price of the cars which he sold, and that it was his duty to sell not only Westcott cars but also used cars and Chevrolet cars and to work for the interest of the plaintiff generally. Perhaps it would be a liberal allowance to charge the defendant with one half of this salesman's wages, from January 30 to May 27th, which would be approximately $170. The same witnesses estimated that the plaintff, at the time the contract was terminated, had on hand Westcott parts which cost from $150 to $200 and which they could not sell. It thus appears that the trial justice was clearly wrong in sustaining the verdict as to the amount of the damages.

Having found that the damages awarded are grossly excessive it is our duty before granting a new trial to give the plaintiff an opportunity to remit so much of the verdict as we adjudge to be excessive. § 5120, G. L. 1923. We think the plaintiff will be fully compensated for all damages proved if the defendant's claim for $500 on book account is disallowed and the plaintiff recovers the following items of expense: $250, one-half of the cost of advertising; $170, one-half of the wages of a salesman; $150, the cost of West-

cott parts on hand, and $200, the amount deposited for security, a total of $770.

The defendant's exception to the refusal to grant a new trial on the ground that the verdict is excessive is sustained. All of his other exceptions are overruled and the case is remitted to the Superior Court for a new trial unless the plaintiff within fifteen days after the filing of this opinion shall in writing file with the clerk of the Superior Court a remittitur of all of the verdict in excess of $770. If within said time the plaintiff files such remittitur the Superior Court is directed to enter judgment for the plaintiff for $770.

*Walling & Walling,* for plaintiff.

*Fitzgerald & Higgins, Walter V. Moriarty, Robinson & Robinson,* for defendant.